UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE J. MENDOZA, | No. 2:16-cv-01554 CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born December 24, 1966 applied on April 6, 2012 for SSI, alleging disability beginning October 25, 2011. Administrative Transcript ("AT") 18, 200. Plaintiff alleged she was unable to work due to severe pain in her lower back, upper shoulders, and upper arms, a back injury, diminished range of motion in her neck, and radiation into her right forearm. AT 79. Initially, upon reconsideration, and ultimately in a decision by the ALJ dated October 1, 2014,

plaintiff was found not disabled.[1] AT 18-26, 110-114, 118-122. At a July 15, 2014 hearing before the ALJ, plaintiff was represented by an attorney. AT 47-78. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since April 6, 2012, the application date.
>
> 2. The claimant has the following severe impairments: fibromyalgia and depression.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

finds that the claimant has the residual functional capacity to perform medium work, except the claimant is limited to simple, routine, repetitive tasks, sit stand and walk 6 hours each during an 8-hour workday; and can lift and carry 50 pounds occasionally and 25 pounds frequently. She can never climb ladders, ropes, or scaffolds and can never work around hazards like unprotected heights or around dangerous moving machinery.

5. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant was born on December 24, 1966, and was 45 years old, which is defined as a younger individual age 45-49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

9. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 6, 2012, the date the application was filed.

AT 20-26.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding her not disabled: (1) the ALJ failed to articulate legitimate reasons for rejecting the opinions of Ms. Mendoza's treating physicians; and (2) the ALJ failed to articulate clear and convincing reasons for rejecting Ms. Mendoza's and her daughter's statements regarding her pain and functional limitations.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

    A. Medical Opinions

Plaintiff asserts that two treating physicians, Dr. Barzaga and Dr. Francisco, diagnosed her with fibromyalgia, citing related symptoms and functional limitations, and that the ALJ erred in according their opinions "reduced weight." Defendant counters that the ALJ properly evaluated conflicting evidence, explaining his interpretation of plaintiff's medical records in a lengthy discussion, and that his findings are reasonable and entitled to deference. The court addresses these doctors' opinions in turn.

    1. Dr. Barzaga

Dr. Graciela Barzaga evaluated plaintiff on June 24, 2013. AT 445-447. She noted plaintiff's "low back pain and diffuse pain since 2001." AT 445. Plaintiff reported to Dr. Barzaga that her "memory is impaired, she is always tired" and that she had daily headaches for the past seven years. AT 445. Plaintiff also reported "intermittent numbness of both hands." AT

4

445. Except for a vitamin D deficiency, plaintiff's laboratory studies were all normal. AT 445. Examining plaintiff, Dr. Barzaga found that she was in "good health," with a negative neurological examination and a normal range of motion in her spine. AT 445-447. However, plaintiff had "more than 18 trigger areas" in her back. AT 446. Dr. Barzaga also noted "slight swelling of the matacarpophalangeal joints." AT 447. Dr. Barzaga diagnosed fibromyalgia[2] and a rule out sleep disorder, and prescribed vitamin D. AT 447.

Six months later, in December 2013, Dr. Barzaga filled out a Fibromyalgia Medical Source Statement for plaintiff. AT 416-420. She indicated that plaintiff met the criteria for fibromyalgia and listed her symptoms and associated conditions: a history of widespread pain, 11 of 18 specified tender points, cognitive dysfunction ("fibro fog"), insomnia, and fatigue. AT 416. Dr. Barzaga identified pain located in the lumbrosacral spine, cervical spine, both legs, and both knees, ankles, and feet. AT 417. She identified hormonal changes and sleep problems as factors precipitating pain. AT 417. Dr. Barzaga concluded that plaintiff lacked "the stamina and endurance to work an easy job 8 hours per day, 5 days per week (with normal breaks every two hours)," citing fatigue as the reason. AT 418. Dr. Barzaga opined that plaintiff would need to take unscheduled breaks once an hour, due to fatigue and muscle weakness. AT 419. She also stated that plaintiff had significant limitations in reaching, handling, or fingering objects. AT 419. Dr. Barzaga opined that plaintiff was incapable of even "low stress" work. AT 420. She also stated that plaintiff was likely to be absent from work more than four days per month. AT 420.

---

[2] "Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches." Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1067 (9th Cir.1999) (citing Arthritis Foundation Pamphlet, Fibromyalgia 6-8 (1989)). "The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch." Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir.1996).

5

After summarizing Dr. Barzaga's findings, the ALJ assessed her opinion as follows:

> Dr. Barzaga's opinion is given reduced weight as it appears to be based more on the claimant's subjective complaints than on any objective findings. In fact, her first evaluation of the claimant in June 2013, found normal neurological examination and no deficits in range of motion or motor strength that would justify such a restrictive limitation on manipulative activities.

AT 23. The ALJ noted that Dr. Barzaga's examination results were consistent with the findings of Dr. Van Kirk, who performed a consultative orthopedic examination of plaintiff in July 2012 (AT 338-342), but "entirely inconsistent with the opinions of Dr. Van Kirk and the State agency non-examining doctors, who did not find a basis for limiting the claimant beyond a medium [RFC] due to normal examination findings and no objective clinical signs . . . that would prevent the claimant from doing such activities." AT 23.

As referenced by the ALJ, Dr. Van Kirk evaluated plaintiff for neck and low back pain in 2012. He noted plaintiff's report that her neck and back pain began after a 1997 car accident, and diagnosed likely degenerative disc disease. AT 338-339. He further noted that plaintiff lived with her children, was able to cook and do "simple household chores such as vacuuming and mopping," took several walks per day, and drove a car. AT 339. Dr. Van Kirk observed that plaintiff appeared "in no acute distress. She sits comfortably in her examination chair. She gets up and out of the chair, walks around the examination room, and gets on and off the examination table without difficulty." AT 339. Dr. Van Kirk concluded that plaintiff had no manipulative limitations, except she should not be required to work with her arms over her head (such as painting a ceiling), as this would cause pain in her neck and shoulders. AT 342. He found various other functional limitations, but nothing approaching Dr. Barzaga's conclusion that plaintiff could not work at all. AT 341-342.

State agency non-examining physician Dr. Gilpeer reviewed plaintiff's medical records and determined that she had some exertional limitation (e.g., could stand or walk with normal breaks for about 6 hours in an 8-hour workday), but no manipulative limitations and a medium RFC. AT 84-86. On reconsideration, state agency non-examining physician Dr. Ligot similarly found plaintiff to have a medium RFC and found her not disabled. AT 98.

The ALJ also found plaintiff's statements about the severity and limiting effects of her symptoms not entirely credible, as discussed below. AT 23. This finding affected the weight he gave medical opinions deemed to be based largely on plaintiff's subjective complaints.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, Dr. Barzaga's December 2013 opinion that plaintiff had severe functional limitations was contradicted by portions of her own June 2013 report and other medical evidence. Insofar as the December 2013 opinion was based on plaintiff's subjective complaints, the ALJ found plaintiff less than fully credible. When a treating or examining doctor's opinion is contradicted by the doctor's "other recorded observations and opinions regarding [the claimant's]

7

capabilities, . . . [s]uch a discrepancy is a clear and convincing reason for not relying on the doctor's opinion[.]" Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding ALJ's decision to discount treating physician's opinion when it was "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's] medical condition, and was based on [the claimant's] subjective descriptions of pain"). The court finds that the ALJ did not err in considering and weighing Dr. Barzaga's opinion.

### 2. Dr. Francisco

Dr. Marie Francisco, plaintiff's primary treating physician, prepared a Complete Medical Report of Physical and Mental Work-Related Impairments on November 13, 2013. AT 410-414. The report indicated that she began treating plaintiff in October 2011. Her list of diagnoses included fibromyalgia and chronic pain syndrome. Treatments included physical therapy, pain medication, muscle relaxants, diet and exercise, and referral to a specialist. Dr. Francisco indicated that plaintiff's chronic pain syndrome had been minimally responsive to treatment. She described plaintiff's prognosis as "fair on chronic pain/fibromyalgia." Dr. Francisco indicated that, based on plaintiff's interview/findings, she had decreased functional mobility. AT 410.

Dr. Francisco opined that plaintiff could never lift or carry any amount of weight, even up to 10 pounds, and that her sitting, standing, and walking were impaired such that she could only sit for two hours, and stand and walk for one hour each, in an eight-hour workday. AT 411. Dr. Francisco further indicated that plaintiff could "never" climb, balance, stoop, crouch, kneel, crawl, reach, handle, feel, or push/pull, and that she could only occasionally grasp and do fine manipulation in both her right and left hands. AT 412. The report also stated that plaintiff had multiple environmental restrictions and must "avoid all exposure" to heights, moving machinery, vibrations, noise, dust, fumes, odors, smoke, chemicals, wetness, dryness, temperature extremes, and an unspecified "other" due to her decreased functional mobility. AT 413. Lastly, Dr. Francisco indicated that plaintiff's ability to understand and carry out job instructions was poor, and that she "gets confused" and has had learning problems since childhood. AT 414.

8

Upon review, the ALJ wrote:

> Dr. Francisco's opinion is given reduced weight as it appears to be primarily based on the claimant's subjective complaints. In particular, her findings of being precluded from carrying any weight is entirely inconsistent with the claimant's own activities of daily living and the fact that she lives alone and provides care for her 10 year old child. Further, her significant restrictions of all postural and manipulative abilities are inconsistent with the evidence of the record as a whole . . . [.] In addition, her findings of poor ability to understand, remember and carry out even simple job instructions because she gets confused and has learning problems since childhood is unsubstantiated by any objective findings.

AT 23.

Elsewhere, the ALJ noted that, in a third party report, plaintiff's 20-year-old daughter indicated that plaintiff was "able to perform a wide range of activities of daily living including cleaning, cooking, handling money and finances, providing care for her children and driving them to and from school. She also notes that the claimant does not have any problem walking and can pay attention 'a long time.' This is entirely inconsistent with the opinion of Dr. Francisco[.]" AT 22; see AT 261-268 (third-party adult function report).

For similar reasons as with Dr. Barzaga, and in light of the record as discussed above, the court concludes that the ALJ did not err in assigning reduced weight to Dr. Francisco's opinion.

B. Credibility

Plaintiff also challenges the ALJ's adverse credibility finding. Specifically, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AT 22.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

At the July 2014 hearing, plaintiff testified that she had pain in her neck, shoulders, arms and hands, that she had been diagnosed with fibromyalgia, and that she was taking pain medication that made her tired. AT 54, 57. She testified that she lived with her 11-year-old son[3] and that her daily activities included using the microwave, hanging up clothes, and cooking. AT 60-62. Plaintiff denied washing dishes, as "the dishes are just too heavy." AT 61. She testified

---

[3] It was unclear from plaintiff's testimony how often one of her adult daughters lived with her; she stated that one daughter worked in North Dakota and another daughter went to college locally but was on vacation. Plaintiff indicated that currently she was living with her son. AT 59-60.

that her son helped her cook breakfast, doing things like cracking eggs and stirring, because when she tried to do those things, "I put myself in too much pain." AT 62. Plaintiff testified that the pain in her arms, hands, back, knees, and feet was "constant," and that, with medication, it was a level 8 on a scale of 1 to 10. AT 66. Plaintiff testified that she used paper plates and plastic spoons because handling dishes and silverware was too painful. AT 67-68. She testified that she could only walk half a block without stopping. AT 70.

The ALJ did not specify which particular statements "concerning the intensity, persistence and limiting effects" of her symptoms he found not credible. AT 22. However, in evaluating the effects of her symptoms, he cited three Adult Disability Reports by plaintiff in 2011 and 2012 and a 2012 Adult Function report in which plaintiff "reported being able to perform a wide range of daily activities[.]" AT 21-22; see AT 253-260 (2012 adult function report). He discussed at length the medical evidence, including reports by Drs. Barzaga and Francisco (which he did not give full weight, as discussed above), the assessments of Dr. Van Kirk and the state agency medical consultants, and 2013 x-rays of plaintiff's hands showing "no significant osseous or degenerative findings." AT 24; see AT 422 (x-ray report). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r Soc. Sec. Admin., 553 F.3d 1155, 1161 (9th Cir. 2008).

Finally, plaintiff argues that the ALJ did not properly consider her adult daughter's statements about plaintiff's pain and functional limitations. "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

As noted above, in June 2012 plaintiff's daughter Karissa Arizola filled out an adult third-party function report about plaintiff. AT 261-268. In assessing plaintiff's RFC, the ALJ gave "great weight" to Arizola's statements that plaintiff could "perform a wide range of activities of

daily living including cleaning, cooking, handing money and finances, and providing care for her children and driving them to and from school"; and that plaintiff had no problem walking and could pay attention "a long time." AT 22. However, he gave "little weight" to Arizola's statements that "were very similar to the claimant's own responses." AT 22.

Plaintiff argues that the ALJ should have credited Arizola's statements that, e.g., plaintiff couldn't do much housework due to the pain in her hands. However, "[w]here the ALJ has first found a claimant not credible, the ALJ may subsequently reject lay testimony because it essentially reproduces the claimant's testimony." Lee v. Astrue, 2010 WL 5662964, *8 (D. Or. Oct. 27, 2010), citing Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009). As the ALJ stated this as the reason he gave little weight to portions of Arizola's statement and his overall credibility determination was supported by substantial evidence, the court finds no error in the ALJ's credibility finding as to Arizola.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18) is granted; and

3. Judgment is entered for the Commissioner.

Dated: August 4, 2017

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE